**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|     Plaintiff/Respondent, § | | |
| § | | |
| V. § | | CR. No. C-02-351 |
| § | | C.A. No. C-06-454 |
| HECTOR RUBIO, § | | |
|     Defendant/Movant. § | | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE AND
<u>ORDER DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Hector Rubio's ("Rubio") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 84),[1] which was received by the Clerk on October 11, 2006, along with his supporting memorandum (D.E. 85). The Court ordered the government to respond, and the government filed a combined response and motion to dismiss on December 18, 2006. (D.E. 86, 87.) Rubio filed a reply on Janaury 22, 2007 (D.E. 91), which the Court has also considered. Additionally, the Court granted limited discovery requested by Rubio (D.E. 89), and the government provided its response to the request for discovery on January 19, 2007. (D.E. 90.)

For the reasons set forth herein, the Court GRANTS the government's motion to dismiss, and DENIES Rubio's § 2255 motion. The Court also DENIES Rubio a Certificate of Appealability.

---

[1] Dockets entries refer to the criminal case.

# I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

# II.  FACTS AND PROCEEDINGS

## A.  Summary of the Offense[2]

On December 8, 2002, a tractor and trailer driven by Hector Rubio entered the Falfurrias, Texas U.S. Border Patrol Checkpoint.  Border Patrol agents conducted an immigration inspection on Rubio, who advised that he was a United States citizen.  Rubio also told one of the agents that he was hauling a load of mixed produce which he loaded in Edinburg, Texas, and was to deliver to Atlanta, Georgia.  The defendant stated that he owned the vehicle.  The agent noted that Rubio avoided eye contact with the agent, instead focusing his attention on the agent with a canine circling around the tractor and trailer.  The canine alerted to the trailer and Rubio consented to a search of the tractor and trailer.  When asked, Rubio also informed the agent that he was present during the loading of the trailer.

Once in the secondary inspection area, agents found 151 bundles of marijuana concealed under bags of onions, having a net weight of 2,241 kilograms.  The estimated value of the marijuana, according to testimony at trial, was $4.3 million.  (D.E. 76, Trial Transcript at 152.)  Agents found two bills of lading in the cab of the tractor, one from Spectra Commodity Sales and the other from Nicho Produce.  Rubio stated that once the

---

[2] The information in this section is derived from Paragraphs 4 and 5 of Rubio's Presentence Investigation Report.

trailer was loaded with the produce, Rubio went home. He denied all knowledge of the marijuana in the trailer and refused to make any further statements.

DEA records reflect that the tractor and trailer are registered to Rubio. On December 8, 2002, a DEA agent and a task force agent attempted to make contact with Rubio at the checkpoint, but Rubio stated that he wanted to speak to his attorney. On December 9, 2002, the DEA agent contacted the owner of Spectra Commodity Sales. The owner stated that the trailer was loaded with onions on December 7, 2002 by one of her employees. The owner further advised that when she entered the trailer to count the pallets of onions there was no marijuana on the truck.

On December 9, 2002, the DEA agent spoke with Robert Rutiaga, an employee of Nicho Produce. Mr. Rutiaga stated that the trailer Rubio drove was loaded at the company's produce shed on December 7, 2002. The employee who loaded the produce for this company advised Mr. Rutiaga that there was already a load of onions at the front of the trailer. Mr. Rutiaga further stated that two individuals, one of whom he stated was Victor LNU, went by Nicho Produce and examined the produce. The two individuals told Mr. Rutiaga that a truck would travel to the produce company on December 6, 2002 to load the produce, and Victor LNU paid for the produce in cash. Victor LNU gave Mr. Rutiaga the destination address to place on the bill of lading. On December 6, 2002, Mr. Rutiaga received a phone call advising that the truck would arrive at the produce company on December 7, 2002, after lunch to load. Mr. Rutiaga stated that on December 9, 2002, Victor LNU returned to the produce shed to receive a refund for a pallet of jalapenos that

could not be loaded on the trailer. Both bills of lading listed an address which DEA found to be non-existent.

**B.    Criminal Proceedings**

On December 19, 2002, Rubio was charged in a single-count indictment with possession with intent to distribute approximately 2,490 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). (D.E. 1.) Rubio pleaded not guilty to the indictment. A jury trial was held on February 11, 12 and 13, 2003, but ended in a mistrial after the jury was unable to reach a verdict. (D.E. 9-15.) After the first trial, defendant advised that he wished to change his plea to guilty, but told the Court that he wanted to go to trial but could not afford it. (D.E. 21.) The Court allowed defendant to complete a pauper's affidavit and appointed Assistant Federal Public Defender Jose Gonzales-Falla to represent him. (D.E. 21.)

The case again proceeded to trial on March 25, 2003 (D.E. 49) and on March 26, 2004, the jury returned a guilty verdict. (D.E. 58.) The Court ordered the United States Probation Office to prepare a Presentence Investigation Report (D.E. 59), and Rubio did not file any objections.

The PSR calculated Rubio's base offense level as a 32 based on 2,241.4 kilograms of marijuana. It did not make any adjustments to the offense level, resulting in a total offense level of 32. (PSR at ¶¶ 10-19.) Rubio had no criminal history, resulting in a criminal history category of I. (PSR at ¶¶ 20-22.) His resulting guideline range was 121 to 151 months. (PSR at ¶ 33.)

On June 9, 2003, the Court sentenced Rubio to 135 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release. The Court also imposed a $1,000 fine and a $100 special assessment. (D.E. 63, 65; D.E. 69, Sentencing Transcript ("S. Tr.") at 5.)  Final judgment was entered on June 15, 2003.  (D.E. 65.)

Rubio timely appealed. (D.E. 64.) On appeal, Rubio raised three arguments.  First, he argued that the evidence was insufficient to support his conviction.  Second, he argued that this Court erred and abused its discretion in allowing a DEA agent to testify regarding drug courier profile testimony.  Third, he claimed that the government committed prosecutorial misconduct because of some of the remarks made in its closing argument. (D.E. 80 at 1.)  In a *per curiam* opinion issued April 27, 2004, the Fifth Circuit rejected his claims and affirmed Rubio's conviction and sentence.  (D.E. 80.)

Rubio filed a petition for writ of certiorari and, on January 24, 2005, the Supreme Court granted the petition, vacated the judgment of the Fifth Circuit and remanded Rubio's case to the Fifth Circuit in light of United States v. Booker, 543 U.S. 220 (2005).  Rubio v. United States, 543 U.S. 1103 (2005).  On remand, the Fifth Circuit concluded that Rubio had not raised a Booker claim on direct appeal and that he could not show plain error in the Court's sentencing.  The appellate court thus issued an unpublished opinion reinstating its prior opinion, which had affirmed Rubio's conviction and sentence.  (D.E. 82.)  Rubio again filed a petition for writ of certiorari, but the Supreme Court denied the petition on October 11, 2005.  (D.E. 83.)

The Clerk received Rubio's motion pursuant to 28 U.S.C. § 2255 and supporting memorandum on October 11, 2006. (D.E. 84, 85.) The motion is timely.

### III.  MOVANT'S ALLEGATIONS

In his § 2255 motion, Rubio lists three grounds for relief. First, he claims that his trial counsel was constitutionally ineffective because he failed "to submit the government's case to a meaningful adversial [sic] testing to prove the elements" of the charged crime. (D.E. 84 at 6.) In his supporting memorandum, he provides the "facts" in support of this claim. In short, he argues that the government failed to prove to the jury beyond a reasonable doubt that he knowingly possessed marijuana and to prove the specific quantity of drugs. (D.E. 85 at 8-10.) He claims that his counsel was ineffective because he failed to object to the government's failure to prove all of the elements of his crime. (D.E. 85 at 8.)

Second, Rubio claims that his trial counsel was constitutionally ineffective because he failed to object to erroneous jury instructions and request proper instructions. (D.E. 84 at 7.) Specifically, Rubio contends that his counsel failed to object to the Court's failure to instruct the jury that the amount of drugs are essential elements of his guilt and failed to object to jury instructions that omitted the essential "mens rea" element of the charged offense, i.e., the element that Rubio knowingly possessed the marijuana. (D.E. 85 at 11-12.) In his argument in support of his second claim, Rubio also claims that the government misled the jury by stating that there was a possibility that the trailer was moved to another

6

location for the unloaded and reloading of the produce, and thereby "poisoned the jury's mind." (D.E. 85 at 11.)

Third and finally, Rubio contends that his counsel rendered ineffective assistance by failing to "properly investigate, obtain or present mitigating evidence." (D.E. 84 at 8.) In his supporting memorandum, he again reiterates that his counsel failed to properly conduct a reasonable investigation. (D.E. 85 at 13.) The only evidence that he claims his counsel should have found in a proper investigation is a surveillance tape of Rubio while in U.S. Border Patrol custody. (D.E. 85 at 13.) He claims that this tape would show Agent Garrett retrieving a piece of paper from Rubio during his interrogation on which Rubio had written the name and number of the individual for whom Rubio was transporting the produce load, Victor from Georgia. (D.E. 85 at 16.) He further claims that, had this evidence been presented, it would have shown not only that Garrett had perjured himself when he testified at trial that he did not take any such piece of paper from Rubio, but also would have been evidence of Rubio's innocence and changed the entire trial. (Id.)

For the reasons set forth herein, all of Rubio's claims are subject to dismissal.

## IV. DISCUSSION

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject

7

to collateral attack. 28 U.S.C. § 2255; <u>United States v. Placente</u>, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992).

**B.       Ineffective Assistance of Counsel**

Rubio's claims are all couched as ineffective assistance of counsel claims. Such claims are properly analyzed under the two-prong analysis set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. <u>Id</u>. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. <u>United States v. Dovalina</u>, 262 F.3d 472, 474-75 (5th Cir. 2001).       If the movant fails to prove one prong, it is not necessary to analyze the other. <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), <u>cert. denied</u>, 514 U.S. 1071 (1995); <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 1. Counsel's Alleged Failure to Ensure the Government Proved The Elements of the Charged Crime

As noted, Rubio's first claim is that his trial counsel failed to require the government to prove the elements of the charged crime, and failed to object to this failure and ask for acquittal. (D.E. 84 at 6; D.E. 85 at 8-10.) As the government correctly notes, to the extent Rubio is challenging the government's failure to prove beyond a reasonable doubt that he knowingly possessed marijuana and to prove the specific quantity of drugs he possessed, his claim is essentially a challenge to the sufficiency of the evidence. This challenge was raised and rejected on appeal. Specifically, the Fifth Circuit rejected both prongs of the sufficiency argument Rubio now raises in his § 2255 motion:

> Rubio's first basis for the sufficiency challenge is that the evidence was insufficient to support the knowledge element of his conviction. Among other evidence, Rubio was stopped at a border checkpoint driving a tractor-trailer that he owned; in the back of the trailer, amid scattered produce, was more than 5000 pounds of marijuana, worth approximately $4.3 million; when stopped, he watched the drug-sniffing dog in a fashion which made the Border Patrol Agent suspicious; he lied to the Agent about whether he had observed his trailer being loaded; the bills of lading had an nonexistent address; and he was unable to produce a means of contacting the person to whom he was delivering the produce. The evidence, viewed in the requisite light most favorable to the verdict, was sufficient for a jury to reasonably infer Rubio's guilty knowledge. ...
>
> The second basis for the sufficiency challenge is the claim that the Government did not prove beyond a reasonable doubt that Rubio knowingly possessed the particular type (marijuana) and quantity (more than 1000 kilograms) of controlled substance at issue. Rubio concedes that this claim is foreclosed by *United States v. Gamez-Gonzalez*, 319 F.3d 695, 700 (5th Cir.), *cert. denied*, 538 U.S. 1068, 123 S. Ct. 2241, 155 L.Ed.2d 1126

>(2003). He presents it only to preserve it for further possible review.

(D.E. 80 at 2-3 (internal citations omitted).)

Accordingly, his claims challenging the sufficiency of the evidence may not be considered here. United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (affirming district court's refusal to entertain the defendant's § 2255 motion and noting that it has long been "settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."); see also United States v. Webster, 421 F.3d 308, 310 n.7 (5th Cir. 2005) (citing to Kalish and noting the rule).

As to his claim that his counsel was ineffective for not challenging the sufficiency of the evidence, he cannot show either deficiency or prejudice. First, at both the close of the government's case-in-chief and the close of the government's rebuttal case, defense counsel moved for a judgment of acquittal and claimed that the evidence was insufficient to show Rubio's knowledge. (D.E. 76, Trial Transcript, at 297-300; D.E. 77, Trial Transcript, at 126-128.) Rubio has not identified any other action that his counsel took or failed to take to challenge the sufficiency of the evidence. Thus, no deficiency on this issue is shown.

Moreover, because both this Court and the appellate court rejected Rubio's challenges to the sufficiency of the evidence, Rubio has not shown that the result of the proceeding would have been different if his counsel had done something different.

Accordingly, he cannot show prejudice, either. United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)(to succeed on a claim that counsel failed to file motions, the defendant must prove "with specificity what should have been done differently and how the outcome of the proceeding would have been different"). Rubio's first claim of ineffective assistance of counsel fails.

### 2.   Counsel's Alleged Failure to Object to Jury Instructions

In his second claim, Rubio contends that his counsel failed to object to the Court's failure to instruct the jury that the amount of drugs is an essential element of his guilt and failed to object to jury instructions that omitted the essential "mens rea" element of the charged offense, i.e., the element that Rubio knowingly possessed the marijuana. (D.E. 85 at 11-12.) He includes in his second claim an unrelated claim of prosecutorial misconduct. That is, he argues that the government misled the jury by stating during closing that it was possible the trailer was moved to another location for the unloaded and reloading of the produce. (D.E. 85 at 11.)

As to Rubio's claim of prosecutorial misconduct, his appellate counsel raised that issue on appeal and the Fifth Circuit rejected the claim. (D.E. 80 at 3.) Thus, this issue cannot be relitigated in his § 2255 motion. See Kalish, 780 F.2d at 508; Webster, 421 F.3d at 310 n.7.

Rubio's claim that his counsel should have challenged certain jury instructions also fails. Notably, contrary to Rubio's assertion, the Court properly instructed the jury that it was required to find beyond a reasonable doubt that Rubio knowingly possessed more than

11

one thousand kilograms of marijuana. (D.E. 60 at 8-10.) The instruction was correct and consistent with the Fifth Circuit pattern instruction regarding an alleged violation of 21 U.S.C. § 841(a)(1). See Fifth Circuit Pattern Jury Instructions: Criminal § 2.87 (2001). There was no error in the instruction Rubio now challenges. Thurs, counsel was not deficient for failing to challenge the instructions, nor is there any prejudice to Rubio as a result of such failure. United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Accordingly, Rubio's ineffective assistance of counsel claim based on his counsel's failure to object to the jury instructions fails.

### 3.     Counsel's Alleged Failure to Properly Investigate, Obtain, or Present Evidence

In his third and final claim, Rubio contends that, had his counsel conducted a proper investigation, he would have discovered and been able to present a surveillance tape of Rubio while in U.S. Border Patrol custody. (D.E. 85 at 13.) He claims that this tape would show that, contrary to Agent Garrett's testimony at trial, Agent Garrett retrieved a piece of paper from Rubio during his interrogation and that this paper had the name and number of the individual for whom Rubio was transporting the produce load. (D.E. 85 at 16.)

At Rubio's request, the Court ordered discovery of any such surveillance tapes. (D.E. 89.) The government has determined that no video or audio "surveillance recordings"

exist of Rubio's stop, arrest and interrogation at the Border Patrol checkpoint on December 8, 2002. (D.E. 90 at 1-2.) According to the uncontested affidavit of United States Drug Enforcement Administration Task Force Officer Russell Vickers, the Falfurrias, Texas Border Patrol Checkpoint has a video recording system and that system was in place and operational on December 8, 2002. (D.E. 90 at Vickers Aff.) However, the tapes from the system are routinely erased within 45 days of the recording, and there are no existing recordings from that date. (D.E. 90 at Vickers Aff.)[3] Thus, it is not clear that his trial counsel could have obtained them, had he started an investigation within a reasonable time after receiving the case.

In any event, even if his counsel could have obtained the videotapes prior to trial, and even if the tape would have showed what Rubio says, the Court finds that there is not a reasonable probability that the outcome of the trial would have been different. As the government notes, the jury heard Rubio's version of events (D.E. 77, Trial Transcript at 55-56), the jury also heard Agent Garrett's testimony denying that he had taken a piece of paper from Rubio. (D.E. 77, Trial Transcript at 117-119.) Additionally, Rubio's counsel cross-examined Agent Garrett on this issue. (D.E. 77, Trial Transcript at 124-26.) Thus,

---

[3] It is not clear from Officer Vickers' affidavit whether any recordings *ever* existed in interrogation rooms, where Rubio says the piece of paper was taken from him, or whether the recordings showed only events occurring in the inspection lanes (either primary or secondary inspection areas.) Because this lack of clarity is the result of the government's failure to adequately explain the recording system in place, the Court will construe the facts most favorably to Rubio and, for purposes of this Order, assumes that there were in fact cameras recording his interrogation.

13

the videotaped evidence would have been cumulative evidence and it is unlikely it would have affected the outcome of trial.

The Court recognizes that a videotape supporting Rubio's version of events as to this issue would have bolstered Rubio's credibility to some extent. Nonetheless, there was still ample evidence to show that he had knowledge that he was transporting drugs. Moreover, the issue of whether he could provide the name and number of Victor from Georgia or an address where he was to take the produce different from the address on the bill of lading simply was not crucial or dispositive to his determination of guilt. Rather, the issue he contested at trial was whether he knew the drugs were in his trailer. As noted by both this Court in denying his motions at trial, and by the Fifth Circuit, there was ample circumstantial evidence showing that he knew he was transporting drugs. (See D.E. 80 at 2.)

Because Rubio has not shown that the outcome of the trial would have been different had his counsel obtained the tape and introduced it into evidence, he cannot establish prejudice. Accordingly, this ineffective assistance of counsel claim fails, too.

For the above reasons, the government's motion to dismiss is GRANTED, and Rubio's § 2255 motion is DENIED.

## C. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Rubio has not yet filed a notice of appeal, this Court

nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Rubio's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Rubio is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the above-stated reasons, the Court GRANTS the government's motion to dismiss (D.E. 87) and DENIES Rubio's motion. (D.E. 84.) The Court also DENIES Rubio a Certificate of Appealability.

ORDERED this 24th day of April, 2007.

_____
HAYDEN HEAD
CHIEF JUDGE